Taft, J.
The tax “levied” is, as disclosed by the words (Section 5546-2, General Code) of the Sales Tax Act, “an excise tax * * * on each retail sale.” Obviously, if a transaction does not involve a “sale” within the meaning of the Sales Tax Act, no tax is levied. The Sales Tax Act provides in part (Section 5546-1, General Code):
“ ‘Sale’ and ‘selling’ include all transactions whereby title or possession, or both, of tangible personal property, is or is to be transferred, or a license to use or consume tangible personal property is granted, for a consideration in any manner, whether absolutely or conditionally, whether for a price or rental, in money or by exchange or barter, and by any means whatsoever * * (Emphasis added.)
It is apparent that the mere transfer of possession of property is not, within the meaning of the foregoing statutory definition, a sale unless it is a transfer “for a consideration.”
There was nothing paid by the customer in the instant case and there was no promise by that customer to pay anything for the transfer of possession to him. However, it is argued that the customer’s alternative promises, i. e., either to pay the sales price for the article delivered or “to give notice of dissatisfaction within a reasonable time,” are both detrimental to him and thus that there is a consideration for the transfer of possession. In making this argument, counsel for the Tax Commissioner recognize that the latter alternative is not onerous but point out that *579 the law does not inquire into the adequacy of consideration.
In our opinion, the words of the Sales Tax Act clearly disclose no intention to ascribe such a technical-meaning to the word “consideration” as used in the definition of “sale” in that act. Thus the amount of the tax levied on a sale by the act is always measured by “the price” (Section 5546-2, General Code); and, in defining that word, the act provides in part (Section 5546-1, General Code):
“ ‘Price’ means the aggregate value in money of anything or things paid or delivered or promised to be paid or delivered by a consumer to a vendor in the consummation and complete performance of a retail sale without any deduction therefrom on account of the cost of the property sold, cost of materials used, labor or service cost, interest or discount paid, or allowed after the sale is consummated, or any other expense whatsoever. ‘Price’ shall not include the consideration received for labor or services used in installing, applying, remodeling or repairing the property sold * *
It is argued that Section 5546-3, General Code, required the vendor to collect the tax on the delivery of an article in such an approval transaction before such delivery to the prospective customer. That section does impose a duty on the “vendor to collect from the consumer the full * * * amount of the tax payable in respect of each taxable sale, and to evidence the payment of the tax in each case by cancelling prepaid tax receipts * * * at the times” specified therein. In so specifying, provision is made only for a classification where the price is paid “at or prior to the delivery of possession of the things sold” and for a classification where “the price is otherwise paid or to be paid.” The approval transactions involved in the instant case could not possibly fall within the first classification. *580 As to the second classification, the requirement of the statute is that “the vendor or his agent shall, at or prior to the delivery of possession of the thing sold to the consumer, cancel or cause to be cancelled * * * prepaid tax receipts. ’ ’
As to this statute, it may be observed that it deals only with a ‘ ‘ taxable sale ’ ’ and its provisions with regard to the second classification relate only to “delivery of possession” of a “thing sold.” If, within the meaning of the Sales Tax Act, there is no sale, the statute by its terms has no application.
It is argued that, in Section 5546-6, General Code, the General Assembly anticipated transactions such as those in controversy in the instant case, made adequate provision to protect vendors from unjust tax liability on account thereof and thereby impliedly recognized that such transactions were taxable sales. However, by its words, that section only relates to instances of “prepaid purchases * * * returned to the vendor.” There might well be such purchases returned where a sale, within the meaning of the Sales Tax Act, had been involved. Such provision does not justify a conclusion that an approval transaction, such as those involved in the instant case, should be treated as a sale within the meaning of the Sales Tax Act if it is not within the statutory definition of a sale.
We are not impressed by the argument of the board based upon the bookkeeping entries made with respect to these approval transactions.
Although bookkeepers or accountants might usually and customarily, and in accordance with good and usual accounting and bookkeeping practices, have made different entries or entries in different accounts to provide a history of these co-called approval transactions, the records of the vendor clearly disclose, as does all the other evidence, that the customer neither paid anything nor agreed to pay anything for deliv-' ery of the articles involved in such transactions.
*581 The only purpose for the bookkeeping records of a business is to provide a reasonably accurate history of its business transactions. No provisions of the Sales Tax Act require any different record of these transactions from that which the vendor maintained.
The decision of the Board of Tax Appeals, being both unreasonable and unlawful, is reversed.

Decision reversed.

Weygandt, C. J., Middleton, Matthias, Hart, Zimmerman and Stewart, JJ., concur.